FILED
2021 FEB 1 AM 11:53
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KALIE BOSKA, ANGELA CORY, and CHRISTINE DAIMARU, <br><br> Plaintiffs, <br><br> v. <br><br> WAYFAIR, LLC, and WAYFAIR OF DELAWARE, INC., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO SEVER** <br><br> Case No. 2:19-cv-00993-JNP <br><br> District Judge Jill N. Parrish |

## INTRODUCTION

Before the court are a Partial Motion to Dismiss (ECF No. 12) and a Motion to Sever (ECF No. 20) filed by Wayfair LLC and Wayfair of Delaware (collectively "Wayfair" or "Defendants"). Kalie Boska ("Boska"), Angela Cory ("Cory"), and Christine Daimaru ("Daimaru") (collectively "Plaintiffs") assert three causes of action against Wayfair: (1) Discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (only as to Boska); (2) Discrimination and Retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and (3) Interference with protected benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 *et seq.* Defendants move the court to dismiss Plaintiffs' Third Cause of Action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendants also move the court to sever Daimaru's claims from those of the other Plaintiffs pursuant to Rules 20(a)(1) and 21 of the Federal Rules of Civil Procedure. For the following reasons, the court GRANTS Defendants' Partial Motion to Dismiss and DENIES Defendants' Motion to Sever.

**FACTUAL BACKGROUND**

The court recites the facts in this section according to Plaintiffs' allegations in the complaint, in the light most favorable to Plaintiffs. *See Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) ("At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013))).The three Plaintiffs all took FMLA leave during their employment with Defendants and were all subsequently terminated. The facts relevant to each Plaintiff's ERISA claims are described in the following sections.

**I.     Boska**

Wayfair hired Boska as a "Team Manager" on or about October 19, 2015. From 2015–2017, Boska received positive performance reviews and regular pay increases, and she received no verbal or written "performance deficiencies."

On or about October 27, 2016, Boska suffered an "attack" at work that resulted in a severe amount of pain. Boska was admitted to the hospital at 5:00 AM the next morning. Boska notified Kim Orehoski ("Orehoski"), a director at Wayfair, of her condition and requested permission to work from home due to the pain she was experiencing. Orehoski denied her request. Boska's medical provider, however, requested that Boska be placed on FMLA leave. Wayfair approved the request, and Boska remained on FMLA leave from October 28, 2016 through December 1, 2016. While she was on leave, Orehoski contacted her and informed her that she was still responsible for covering her work responsibilities.

On December 6, 2016, shortly after Boska returned to work, Orehoski requested a meeting with Boska, in which Boska informed Orehoski that she required an Endoscopic Ultrasound

2

Procedure ("EUS procedure"), apparently to diagnose the source of her pain. The next day, Boska's medical provider once again requested that Boska be placed on FMLA leave to undergo the EUS procedure—two weeks of consecutive time off and two additional weeks of intermittent leave in the event that her symptoms flared up. Wayfair only approved two weeks of FMLA leave, which Boska took from December 20, 2016 to January 4, 2017.

Prior to this two-week FMLA leave but after the December 6th meeting with Orehoski, Boska's manager, Miles Dunn ("Dunn"), placed Boska on a 30-day disciplinary plan, advising her that FMLA was "not for going out" or "to party" or for "going to Christmas parties." On January 6, 2017, shortly after Boska returned to work, Dunn and Orehoski gave her a "final written warning." They informed her that the warning was for failing to hold her team accountable and for failing to give her team members final warnings for the three weeks prior to her most recent FMLA leave. On January 12, 2017, Dunn and Oheroski placed Boska on a less favorable shift, a night shift, and reassigned her to another team. Boska filed an internal complaint about Dunn and Oheroski's apparent retaliation. A member of Wayfair's human resources department agreed that Boska's treatment was unfair and she was reassigned to her previous shift. She continued to supervise her new team, however.

On August 10, 2017, Boska was diagnosed with Hodgkin's Lymphoma, a form of blood cancer with various debilitating symptoms. Boska requested and was granted FMLA leave from November 1, 2017 until May 1, 2018 to undergo treatment, including chemotherapy. When Boska returned to work, she was placed on a "Disciplinary Development Plan" in order to "come up to speed" after her absence. And in July 2018, her then-manager, Lani Watson, gave her an unsatisfactory performance rating, despite the fact that a month earlier, in June 2018, Watson had informed Boska that she was "successful" and was "reaching her goals for her team." Boska also

3

received a "final written warning" in August 2018 after attempting to end an argument between two co-workers, an effort that resulted in an argument between Boska and one of the co-workers.

In September 2018, Boska's new manager, Logan Weber ("Weber"), informed her that Orehoski intended to place her on another Disciplinary Development Plan for failing to meet certain team goals. Weber sent a copy of Boska's team statistics to an analyst within the company for review. Upon review, Weber did not believe a disciplinary plan was necessary. He persuaded Orehoski not to put her on the plan.

Later, on November 1, 2018, the Human Resources department contacted Boska and informed her that Orehoski had requested a meeting. In the meeting, Orehoski informed Boska that she was being terminated because of discriminatory comments she had written about a job applicant she had interviewed in July 2018. Boska denies that the comments were discriminatory and asserts that Orehoski used them as pretext to hide her improper motives for terminating Boska. Boska further asserts that her comments about the job applicant regarded the applicant's own discriminatory remarks during his interview, in which he said that he was more experienced than the "younger generation" and that "the younger generation never knew what they were doing."

**II. Cory**

Wayfair hired Cory as a Customer Service Representative in August 2014. From 2014–2017, Cory received positive performance reviews and regular pay increases, and she received no verbal or written "performance deficiencies." She was promoted to "Team Manager" in September 2015. In July 2018, Cory was diagnosed with pre-cancerous cells on her uterus. In August 2018, she requested and was approved for FMLA leave in order to undergo a hysterectomy. Her FMLA leave began on September 1, 2018, and she returned to work on October 16, 2018.

On November 1, 2018, Orehoski and Brenna Heidrik ("Heidrik") called Cory and informed her she was being terminated. They told her it was because she had included employees' medical information in her personal notes and had written "age discrimination" in her personal notes regarding a potential employee. Cory alleges that the "age discrimination" note referred to an interviewee that made discriminatory comments toward "the younger generation."[1] Cory does not include in the Complaint any facts about notes that she allegedly made about an employee's medical information. But she alleges that Wayfair's reasons for terminating her were pretextual—she was actually terminated in retaliation for using FMLA leave and because Wayfair desired to avoid paying her under an ERISA-protected group health plan.

## III. Daimaru

Wayfair hired Daimaru as an Inbound Email Customer Service Representative on October 19, 2015. From 2015–2018, Daimaru received positive performance reviews and regular pay increases, and she received no verbal or written "performance deficiencies." Prior to being employed at Wayfair, Daimaru was diagnosed with severe food allergies. She also suffered a hiatal hernia and underwent a cholecystectomy, a surgery to remove her gallbladder. As a result of these conditions, Daimaru suffers from severe symptoms including stool urgency and diarrhea. These symptoms cause her to take frequent bathroom breaks and time off of work.

In August 2018, Daimaru requested and Wayfair approved intermittent FMLA leave through February 2019. While she was on FMLA leave, Daimaru's manager, Michael O'Day ("O'Day"), issued her a "final written warning." He accused her of "stealing time" because she

---

[1] It is unclear from the Complaint whether this was the same person interviewed by Boska who made comments about the "younger generation."

was not clocking in and out while using her intermittent FMLA leave throughout the day. Daimaru had not received any verbal or written warnings prior to this final warning.

Daimaru renewed her request for intermittent FMLA leave in February 2019, and Wayfair approved it through April 2019. On April 2, 2019, O'Day called Daimaru via Skype and accused her of inappropriately failing to clock out while using her FMLA leave because on several days during the prior month, Wayfair's computer system indicated Daimaru's status as "not ready." O'Day alleged that Daimaru was not working on anything for 8-15 minutes a time on those days. Daimaru responded that she had not been told to clock out while using her FMLA leave. Nevertheless, she was terminated the same day, April 2, 2019, for "work avoidance."

## LEGAL STANDARD

### I. Motion to Dismiss

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when the plaintiff fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### II. Motion to Sever

Federal Rule of Civil Procedure 20(a)(1) provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

Federal Rule of Civil Procedure 21 states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "The grant or denial of a motion to bring in or drop a party lies in the discretion of the [district court] judge." *K-B Trucking Co. v. Riss Int'l. Corp.*, 763 F.2d 1148, 1153 (10th Cir. 1985) (citation and internal quotation marks omitted). The Supreme Court has explained that "[u]nder the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

## DISCUSSION

### I.   Motion to Dismiss

Wayfair moves to dismiss Plaintiffs' third cause of action—interference with an ERISA-protected benefit. ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140 (The court refers to this provision as "Section 510" because it is contained in Section 510 of ERISA).

To state a prima facie case under Section 510, a plaintiff must allege: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to

7

which the [employee] may become entitled." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1207 (10th Cir. 2012) (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)). A plaintiff need not show that the employer's "sole motivation is to interfere with employee benefits"; rather, "she need only show that it was a motivating factor." *Garratt v. Walker*, 164 F.3d 1249, 1256 (10th Cir. 1998). In addition, a plaintiff "may rely upon direct or indirect proof" to establish an employer's specific intent to interfere with protected benefits. *Id.* (quoting *Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993)); *see also Gavalik,* 812 F.2d at 852 (explaining that "[i]n most cases, . . . specific intent to discriminate will not be demonstrated by 'smoking gun' evidence" and thus "the evidentiary burden . . . may . . . be satisfied by the introduction of circumstantial evidence").

Defendants argue that Plaintiffs' ERISA claims must be dismissed because the complaint fails to identify any ERISA plan or ERISA-protected benefit with which the Defendants interfered, other than a "vague reference" to group health benefits. Defendants further argue that even if Plaintiffs had identified an ERISA-protected benefit, they failed to establish a prima facie case under Section 510. This is because, according to Defendants, Plaintiffs only allege the following: (1) That Plaintiffs received employee benefits under Wayfair's ERISA-governed health plan; (2) that Wayfair's plan existed during the Plaintiffs' employment; and (3) that Plaintiffs were terminated. Defendants argue that "[i]f plaintiffs could establish ERISA liability on these facts then any employer who provides ERISA benefits would face an ERISA § 510 discrimination claim every time the employer fired a participant employee, no matter the reason for the termination." ECF No. 12 at 6 (quoting *Perrmann v. CF Industries, Inc.*, No. 1:05-cv-633, 2006 WL 3762132, at *9 (S.D. Ohio Dec. 21, 2006)).

Plaintiffs respond that it is unnecessary to identify a specific ERISA plan in the complaint. Rather, Plaintiffs contend that "Federal Rule of Civil Procedure 8(a)(2) requires 'only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" ECF No. 14 at 2 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555))). Plaintiffs argue that the reference to the "group health plan" in the complaint is sufficient to give Defendants fair notice of the grounds upon which their ERISA claim rests. Plaintiffs argue further that they have met their prima facie burden by alleging their specific health conditions, the suspect timing of their terminations, and the pretextual reasons Defendants offered to support their decision to terminate Plaintiffs.

The court agrees with Plaintiffs that the Complaint sufficed to give Defendants "fair notice" of the grounds of their ERISA claim. Defendants cite no authority that would require Plaintiffs to describe in more detail than they did the ERISA plan at issue. Defendants are no doubt aware of the health benefits they provided to Plaintiffs. If no such health plan existed, or if it did not cover Plaintiffs or qualify as an ERISA-protected benefit, Defendants could have raised these issues in their motion to dismiss, but they did not.

Although Plaintiffs' failure to specifically identify the health plan at issue is not grounds for dismissal, the court concludes that Plaintiffs have failed to state a claim for a violation of Section 510 of ERISA. Plaintiffs have failed to allege facts upon which a reasonable trier of fact could find that Defendants terminated them in order to avoid providing them with health benefits. Plaintiffs allege only that they suffered from various medical conditions and that they were terminated. It is not clear from the allegations in the Complaint why these medical conditions would have caused Defendants to terminate Plaintiffs when they did. Plaintiffs do not allege, for

example, that their various illnesses would have caused Defendant to incur ongoing or increased costs if Plaintiffs were to remain employees. It does not appear, based on the allegations in the complaint, that the timing of their employment terminations corresponded with a sudden increase in medical expenses or worsening of conditions that would cause Defendants to incur costs beyond what they were already paying to cover Plaintiffs under their ERISA plan. Indeed, Plaintiffs apparently suffered from their respective ailments while employed by Defendants. The timing of the terminations, at least when it comes to ERISA benefits, is not "suspicious," as Plaintiffs claim.[2]

Perhaps the timing of Plaintiffs' terminations could support a finding of Defendants' "purpose of interfering" if combined with other indicia of such a purpose. But Plaintiffs have not alleged any facts that would support a finding that Defendants terminated their employment in order to interfere with their ERISA-protected benefits. Thus, the court agrees that if Plaintiffs could establish ERISA liability on the facts alleged in the Complaint, any employer who provides ERISA benefits would face a Section 510 discrimination claim every time it fired a participant employee, no matter the reason for the termination. *See Perrmann*, 2006 WL 3762132, at \*9. In short, Plaintiffs' ERISA claims are not plausible and are therefore dismissed.

## II. Motion to Sever

Defendants also argue that Daimaru's claims should be severed from Boska's and Cory's claims because there is no common set of operative facts between them. They assert that the "test [for permissive joinder] focuses not on whether there are similar issues of liability, but whether the plaintiffs' claims share 'enough related operative facts.'" ECF No. 20 at 3 (quoting *Rubio v.*

---

[2] Indeed, the timing of Plaintiffs' respective terminations is more closely associated with Plaintiffs' use of FMLA benefits. Because Defendants do not move to dismiss Plaintiffs' FMLA retaliation claims, the court need not address that issue here.

*Monsanto Co.*, 181 F. Supp. 3d 736, 756 (C.D. Cal. 2016)). Specifically, Defendants argue that Daimaru's claims do not arise from the same set of operative facts because: (1) Daimaru's claims arise from different allegations of wrongdoing by different supervisors; (2) Daimaru was not employed in a position similar to the other Plaintiffs (Customer Service Representative as opposed to Team Manager); and (3) the performance deficiencies for which Daimaru was terminated were different (work avoidance as opposed to inappropriate notes). Defendants further argue that allowing the claims to go forward together presents a risk of undue prejudice. They cite *Disparte v. Corp. Exec. Bd.,* 223 F.R.D. 7, 15 (D.D.C. 2004) for the proposition that "there is a significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses' testimony." Plaintiffs respond that their allegations arise from "the same core set of discrimination and retaliation . . ." by employees of Wayfair. They also point to their allegation in the Complaint that Wayfair "implemented a company-wide practice of . . . eliminating any personnel that had requested and/or exercised their right to FMLA leave and/or an ADA accommodation." ECF No. 2 at 90.

      District Courts have granted motions to sever, even when the plaintiffs' claims were logically related, where plaintiffs worked under different supervisors or in different offices or departments within a company, and where the alleged acts of discrimination were temporally distant. *See, e.g., Disparte*, 223 F.R.D. at 15; *McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 695–96 (N.D. Ill. 2009). Courts are less likely to sever claims where plaintiffs allege a company-wide pattern or practice of discrimination. *See, e.g., Aguilar v. Schiff Nutrition Int'l, Inc.*, No. 2:07-CV-504-TC, 2008 WL 4526051, at *12 (D. Utah Sep. 29, 2008). This is true even in cases where plaintiffs did not work in the same department or geographic location. *See, e.g., King v. Ralston Purina Co.*, 97 F.R.D. 477, 480 (W.D.N.C. 1983) (allowing claims to proceed

jointly in part because of "pattern and practice of unlawful age discrimination," despite plaintiffs having worked in "different places and in different divisions of the company."). However, courts have granted motions to sever even in the face of a pattern or practice allegation where the "discretionary decision of their individual supervisors put [the discriminatory] policy into effect." *McDowell*, 645 F. Supp. at 695. Finally, in deciding whether to sever claims, courts have considered "the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic." *Cheek v. Garrett*, No. 2:10-CV-508 TS, 2011 WL 1085780, at *2 (D. Utah March 21, 2011) (citations and internal quotation marks omitted).

The court declines to sever Daimaru's claims at this time. While Plaintiffs held different positions and were terminated by different supervisors for different reasons—Boska and Cory for inappropriate personnel notes and Daimaru for work avoidance—other factors appear to weigh in favor of allowing the claims to proceed together. Plaintiffs all worked in the same office and apparently in the same department—customer service. Their terminations were separated by about six months and the same H.R. department was likely involved in the termination decisions for all three, though it is unclear whether the same individual H.R. employees were involved.

Because a decision to sever claims turns on their factual similarities and differences, the court declines to order severance at this juncture. Judicial economy will be served by allowing the claims to proceed together through the discovery process. Discovery may reveal facts that would either support or counsel against severance. For example, it may be that different members of the H.R. department were involved in Daimaru's termination. Or perhaps Plaintiffs will fail to uncover evidence that Wayfair had a widespread practice of retaliating against employees that availed themselves of FMLA leave. At oral argument, counsel for Wayfair did not object to allowing the claims to proceed together through discovery and conceded that such an approach would serve

judicial economy. Because the decision to sever or bifurcate may be made any time prior to trial, Defendants may renew their motion to sever following the completion of fact discovery.

## CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS Defendants' Partial Motion to Dismiss. It is HEREBY ORDERED that Plaintiffs' Third Cause of Action is DISMISSED without prejudice. Plaintiffs may file an amended complaint on or before February 15, 2021.[3] Defendants' Motion to Sever is DENIED without prejudice.

DATED February 1, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[3] At oral argument, counsel for Wayfair noted that allowing Plaintiffs to amend the complaint may require extending the deadline to conclude discovery. If Plaintiffs do submit an amended complaint, the court will entertain a stipulated motion by the parties to extend the discovery deadline.